[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
PROCEDURAL HISTORY
This matter first came to the court by summons and complaint dated October 6, 2000 and returnable October 7, 2000 in which complaint the plaintiff petitioner sought a dissolution of the marriage, a fair division of the property and debts, alimony, child support, sole custody and primary residence of the two minor children and such other relief as the court determines to be fair and equitable.
Accompanying the complaint was a notice of automatic court orders.
On October 23, 2000 the defendant appeared by counsel
On October 30, 2000 the plaintiff filed motions for alimony and support which motions were the subject of an agreement entered by the court on February 23, 2001.
The plaintiff's motions for custody and exclusive use filed on October 30, 2000 were the subject of an agreement entered by the court on December 18, 2000.
On December 4, 2000 the plaintiff filed a motion for order which was the subject of an agreement entered by the court on December 18, 2000.
There are several additional pendente lite motions filed by the parties, which do not appear to have, been acted on by the court.
THE COURT MAKES THE FOLLOWING FINDINGS OF FACT:
The defendant, whose maiden name was Helen Pappas and the plaintiff, were joined in matrimony at New London, Connecticut on June 1, 1974.
The plaintiff has resided continuously in this state for more than one year prior to the initiation of these proceedings.
The marriage of the parties has broken down irretrievably with no reasonable prospect for reconciliation.
The plaintiff and the defendant have two minor children issue of this marriage, Alexandra Leigh Schlicht born December 4, 1985 and Erika Elizabeth Schlicht born May 31, 1989. CT Page 15154
No other children have been born to the plaintiff wife since the date of the marriage of the parties.
This is the first marriage for both parties.
Neither the State of Connecticut nor any municipality, town, city or subdivision thereof is contributing to the support and maintenance of either the plaintiff or the defendant or the minor children.
The husband's education extended through two years of college.
The wife's education extended through completing of college.
The plaintiff is employed as a bank teller at Fleet Bank.
The plaintiff for most of the twenty-seven year marriage maintained the household and cared for the minor children.
From the financial affidavits of the parties the court finds, as concerns the plaintiff, that her principal employer is Fleet Bank. Her weekly gross is $430.00, itemized deductions that appear reasonable in the amount of $137.00 for a net of $293.00.
She shows expenses of $1,180.00. The plaintiff affidavit reflects no debt.
The plaintiff is in good health.
The defendant is the sole proprietor of Quality Transmissions. The business is located in New Milford, Ct.
The defendant's financial affidavit reflects weekly gross income of $1197.11 with deductions of $455.25. He shows a net weekly income of $741.86, weekly expenses of $942.80 and debts totaling $3,210.00.
The principle assets of the parties are the marital home and the business known as Quality Transmissions.
No evidence was presented as to the value of the marital home. The plaintiff's financial affidavit set's the equity in the marital home at $137,000.00. The defendant, in his financial affidavit set's the equity at $163,000.00.
No evidence was presented as to the value of Quality Transmissions. The defendant's financial affidavit set's the value at $22,100.00. CT Page 15155
DISCUSSION
This is a marriage of twenty-seven years duration.
This is the first marriage for both parties.
There are two minor children issue of this marital union.
There is no state or local assistance involved as to either of the parties or the minor children.
The parties are both in good health.
The plaintiff is employed as a bank teller.
The defendant is the sole proprietor of Quality Transmissions.
The breakdown in the marital union was apparently primarily attributable to financial issues.
Almost all the testimony related to the issues of the defendant's income and the validity of the plaintiff's weekly expenses.
The plaintiff presented testimony from Mr. John L. Wonnebeger ("Wonnebeger") a Certified Public Accountant related to the defendant's income. Wonnebeger presented an analysis that estimated the defendant's gross income for year 2000 at between $69,000 and $85,000 and for year 1999 at between $79,600 and $90,200. The annual gross income amount set out in the defendant's financial affidavit is $62,244.
On the basis of the testimony adduced and the courts determination of the credibility of the parties, it would appear that the earning capacity of the defendant is greater than the amount set out in his financial affidavit.
It would appear that the plaintiff is doing the best that she can on the basis of her age, health, education and overall financial circumstances and that the plaintiff's skills are probably not likely to markedly increase in the near term; however, as between the plaintiff and the defendant, the defendant has much the better of it with regard to present and future prospects.
THE LAW
With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows: CT Page 15156
 "This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court. (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight."
Valente v. Valente, 180 Conn. 528, 530 (1980).
The plaintiff's nonmonetary contributions to the family assets ought to be considered.
 "A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities."
Blake v. Blake, 207 Conn. 217, 230 (1988).
It is well settled law in Connecticut that a court may base financial awards on earning capacity rather than income claimed by the parties. InBleuer v. Bleuer, 59 Conn. App. 167 (2000) the Appellate Court stated:
 "While there is no fixed standard for the determination of an individual's earning capacity; it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it CT Page 15157 confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." (Citations omitted: internal quotation marks omitted).
The court finds that the plaintiff has an annual earning capacity of $80,000.00.
The Court has considered all of the applicable case law that governs the matter. The court has considered all of the criteria of General Statutes 46b-81, 46b-82, 46b-84, 46b-62, and 46b-56a. The Court has considered the testimony of the parties, their candor or lack thereof and all exhibits and the arguments of counsel.
The court enters the following orders:
DISSOLUTION
The marriage has broken down irretrievably without hope of reconciliation, therefore a decree may enter dissolving the marriage.
CUSTODY VISITATION
The parties shall have joint legal custody of their children, Alexandra and Erika. The children's primary residence will remain with the mother. The father shall have reasonable, liberal and flexible rights of parenting time with the children including but not limited to, every other weekend from 5:00 p.m. Friday until 7:00 p.m. Sunday. The Thanksgiving and Christmas holidays will be alternated annually with the plaintiff having the children at Christmas and the defendant at Thanksgiving in 2001. The children shall be with the mother on her birthday and on Mother's day and with the father on his birthday and on Father's day. The parties shall share the children's birthdays. The father shall have two weeks of consecutive summer vacation with the children. The parties shall equally share in providing transportation for all visitations.
CHILD SUPPORT
Child support is ordered in the amount of $264.00 per week, which is in accordance with the child support guidelines, based on the finding that the defendant's earning capacity, is $80,000.00
EDUCATION
CT Page 15158
The court makes no order related to educational expenses.
ALIMONY
The plaintiff shall pay periodic alimony to the defendant in the amount of $200.00 per week for six (6) years from the date of this decision. Thereafter, he shall pay the sum of $150.00 per week for an additional period of six (6) years. Said alimony shall be non-modifiable as to term and shall terminate upon the first of the occurrences of the following events:
a. Death of the plaintiff or the defendant.
b. Remarriage of the plaintiff.
 c. Cohabitation by the plaintiff with a third party as defined in General Statutes § 46b-86 (b).
d. Twelve (12) years from the date of this judgment.
Said periodic alimony shall be tax deductible to defendant and tax includible to the plaintiff.
The defendant may earn up to $30,000 annually without the same being considered as a substantial change in circumstances for purpose of modification as to the amount of alimony.
This alimony obligation is intended as a separate maintenance and said obligation shall not be affected by any discharge in bankruptcy.
MEDICAL INSURANCE
The plaintiff is to provide medical insurance coverage for the benefit of the minor children. All unreimbursed medical expenses shall be divided in accordance with the child support guidelines, which currently provide for the mother to pay 48% and the father to pay 52%. The plaintiff shall maintain her own health insurance. The defendant shall be responsible for his own health insurance.
LIFE INSURANCE
The defendant shall maintain life insurance in the amount of $100,000 naming the plaintiff as irrevocable beneficiary for so long as he has an obligation to pay alimony. The defendant shall further maintain life insurance in the amount of $100,000, naming the two children as irrevocable beneficiaries until the youngest child has attained the age CT Page 15159 of twenty-one (21). The plaintiff shall maintain life insurance in the amount of $100,000 naming the two children as irrevocable beneficiaries until the youngest child has attained the age of twenty-one (21).
PERSONAL PROPERTY
The parties have agreed to a division of personal property insofar as the items of personal property that have not been specifically allocated in the division of assets set forth herein.
TAX EXEMPTIONS
Defendant shall be entitled to claim the older child, Alexandra, as a tax dependency exemption and the plaintiff shall be entitled to claim the younger child, Erika.
MARITAL RESIDENCE
The family residence located at 98 Sherman Road, New Milford, CT shall be the property of the plaintiff. The defendant shall quit claim all of his right, title and interest in said property to the plaintiff forthwith. The plaintiff shall pay and hold the defendant harmless from any and all obligations and expenses related to said property including but not limited to mortgage, taxes, repairs and insurance on said property. Within three years from the date of judgment the plaintiff shall make every good faith effort to refinance the home to remove the defendant's name from the mortgage debt.
The tangible personal property at the marital residence shall be the property of the plaintiff free of any claim or demand by the defendant except for the defendant's tools which the defendant may remove from the premises.
AUTOMOBILES
The parties shall maintain possession of the motor vehicles currently in their possession. The parties shall cooperate in the preparation of any documentation necessary to transfer title of said vehicles.
LIABILITIES
Each Party shall be responsible for those liabilities as shown on their respective financial statements and shall the other party harmless from any claims or demands thereon.
RETIREMENT ACCOUNTS
CT Page 15160
The parties shall retain all right, title and interest in to any and all retirement accounts and/or retirement plans currently owned by either party free and clear of any claim or demand by the other party.
ATTORNEY'S FEES
The court enters no orders as to attorney's fees and leaves the parties to make their own arrangements with counsel.
OTHER ASSET DIVISION
The plaintiff shall convey to the defendant any interest she may have in and to the business known as Quality Transmissions. The defendant shall hold the plaintiff harmless for any debts and liability arising out of the operation of said business.
The business known as Quality Transmissions shall be wholly the defendant's free of any claim or demand by the plaintiff.
The plaintiff's remaining personal property in her possession shall remain her personal property free of any claims by the defendant. The defendant's personal property in his possession shall remain his personal property free of any claims by the plaintiff.
OTHER MATTERS
Each party may keep and retain any other assets that they have or are shown in their financial affidavits free and clear of any claim of the other;
Each party to be responsible for the debts and obligations shown on their respective financial affidavits.
The parties are declared to be single and unmarried pursuant to the provisions of the statute.
The marital union is dissolved.
Cremins, J.